First case this afternoon, case number 4-16-0756, Cardinal Catastrophe Services, Inc. v. Francis for the acknowledgement of Tina Magg for the athlete Larry Calhoun. Thank you, Mr. Clerk. Mr. Magg, you're good to proceed. Okay, please do so. I represent Cardinal Catastrophe Services, Inc., the plaintiff appellant in this case. It's a relatively straightforward case. I represent a contractor who does siting, roofing, that sort of work. A contract was entered into which is attached to the first amended complaint in which Cardinal Catastrophe Services entered into a contract with Richard Francis to perform some storm damage repair work at his premises. Counsel, let me interrupt you a second. Sure. Keep arguing. I brought the wrong file, but I'll be right back. Pretty good. In any event, Richard Francis, it is our position that he signed what is labeled as Exhibit A to the first amended complaint, the contract, for some storm damage repair services to be performed. My client, through the president of the company, showed to the site he's the one that got the contract signed. Thereafter, at a later date, when my client went to the premises to start to perform some work, it was his understanding and belief, either the work had already been done or the homeowner had told him, I've signed a contract with someone else, your contract is no good. My client commenced this action. It's essentially a debt collection case, if you will, where, pursuant to a liquidated damages clause, which is on the second page of Exhibit A, which is attached to the first amended complaint, has a provision providing for $1,000 liquidated damages, or alternatively, 17% of the replacement cost value of what the contract was for. My client, for purposes of this lawsuit, is seeking $1,000 plus cost of suit and a reasonable attorney's fee. Is there a provision in the contract for attorney fees? It is, your honor. It is on, looks like paragraph 15, page 2 of the first amended complaint. There's a little bit of procedural confusion, or a little bit of wrinkle, if you will, in the filing of the amended complaint and the motion to dismiss, just as a little bit of explanation on that. There was a complaint pending at the time the motion to dismiss hearing was set. I had a motion for leave to amend. The court granted leave to file the first amended complaint. There technically wasn't a motion to dismiss directed at that, but I think the court largely just took the argument directed against the complaint towards the first amended complaint. The circuit court, when it entered its dismissal order on this file, I think clearly erred in its interpretation of a Supreme Court decision, which was brought to their attention involving the Illinois Home Repair Remodeling Act. The Supreme Court case at issue is K. Miller Construction Company, Inc. v. McGinnis. It's K. Miller Construction Company. In a nutshell, what the Supreme Court did, there was a disagreement among the appellate courts, including this court with the First District Appellate Court, for example, on if the Home Repair Remodeling Act was not explicitly complied with, there was an issue among the courts. Does that mean that, for example, if a pamphlet is not given pursuant to the Home Repair Remodeling Act, does the homeowner get to just walk away from the contract? Or if a contract doesn't have a specific term in it that the Home Repair Remodeling Act says is required to be there, does the homeowner get to wait for the contractor to do everything and then walk away from having to pay? And there was disagreement on that. Oversight or something isn't explicitly complied with the statute doesn't mean that a homeowner is going to be able to get the benefit of a contractor's work or attempted work and then just walk away scot-free. And the Supreme Court case on the last page of it, they were quoting one of the legislators dealing with the statute saying, a consumer cannot get out of paying the balance due to a home repair or remodeling company by using these two technical provisions in the act of requiring a pamphlet to be given and requiring a written contract before work on the project. The arguments raised by the homeowner in this case are essentially the arguments that were raised by the homeowners in the Supreme Court decision that I just referenced. The arguments raised by Richard Francis here, one is that a pamphlet wasn't provided to him pursuant to the Home Repair Remodeling Act. While what my client said himself isn't in the record, if this court looked to Exhibit A, which again is attached to the First Amended Complaint, and looked towards the bottom of the page where the homeowner signed, you'll see a signature and date where the homeowner acknowledged receiving the pamphlet that the homeowner is saying he didn't receive. I think that's a fact question, but nevertheless, one of the two dismissal arguments raised by the homeowner in this case, that he didn't get the pamphlet, it's our position that even the contract he signed said he got the pamphlet. The second argument raised by the homeowner in this case is, if you want to oversimplify this a bit, the contract, well, at the hearing on the motion to dismiss, it was a bit unclear. At some points in the transcript, there's an argument that they don't think it was a contract, and then other parts, they argue, well, yes, there is a contract, we just think it violates the Home Repair Remodeling Act. In any event, the Illinois Supreme Court case that I had cited, the K. Miller Construction Company, involved an oral contract. There was no writing, nothing. It was just two people talking with one another, and the Supreme Court said, that's okay, you're going back to the trial court, you can proceed on breach of contract and or quantum aramid, either or both. It's my position, representing the contractor in this case, that if an oral contract is good enough for the Supreme Court to pursue on breach of contract or quantum aramid, then certainly a contract that maybe the homeowner doesn't think is specific enough should be enforceable and adequate enough. Mr. Magg, I want to clarify something or ask you for clarification. You just indicated that there maybe was some confusion as to whether or not there was an acknowledgement that this was a contract. In your brief, you wrote, defendant conceded there is a contract, and you cited the record. Yes. Can you clarify, was it conceded or was it not, that this is a contract? Sure. So I don't have the record in front of me, but I can represent to you that one of the statements that was made was to the effect of what we have here is a contract, but it violates the Home Repair Remodeling Act, and there was another portion of that same hearing at the motion to dismiss where it was argued to the effect that I don't think this is a contract, I just think that this is an authorization for Cardinal Catastrophe to speak to an insurance company and the homeowners to have. So I think both were said, but as to the issue of whether or not this is a contract and touching upon that a little bit, it would be my position that you've got a written document exhibited attached to the first amendment complaint that has the name of the insured, a signature, date, the address of the premises. It's circling hail damage and the like as the subject of what it is that he's going to be doing. The contract incorporates by reference the insurance scope of work or scope paperwork, I guess, of what it is that needs to be done as the bid and the price. So in a sense... You say that's included? So the language incorporating the scope paperwork is on page one. It doesn't have a number by it, but I'd call it paragraph one of the contract. It incorporates into the contract and is a part of it. Our sale price is the insurance scope and what they're saying they're going to pay and the nature of the services, that is what we're going to do. And it goes into detail if you're hiring us to do all matters necessary for restoration, rehabilitation, and renovation of damages sustained. It also goes into, it looks like one, two, three, but the fourth paragraph down, I guess I would call it like, kind, and quality language of materials to be used. Part of the issue, and from my client's standpoint, the irony of the defense being made by the homeowner about lack of specificity. Part of the contract, again, was incorporating insurance documents. And the contract requires in the first paragraph for the homeowner to provide this various insurance scope paperwork to Cardinal Catastrophe, which my client, I mean, it's not in the record, but it wasn't done. That's why a motion for a leave to seek discovery was filed in the case to get those documents. So, I mean, in essence, part of their defense to the case of lack of specificity of a contract is because they themselves were breaching the contract to provide that supplemental document that would make the entirety of the contract. So they're breaching the contract and using their breach as a defense to a contract of action saying it's not specific enough. I mean, in a nutshell, I suppose I would just argue that it is our position that, if anything, the homeowner in this case was frustrating my client, the contractor, from getting the insurance documentation and trying to perform work as he had a contract to do, that a homeowner should not be rewarded or allowed. And I don't think the Supreme Court's case in K. Miller Construction Company allows for and condones what was done in this case of someone trying to use technical violations of a contract, assuming there were violations of the contract. For example... Did your client do any work? In the sense of, well, addressing that point, Your Honor, I'd like to address it sort of twofold. On the one hand, I don't think that's technically the inquiry on a 2615 motion as what's before the court. That being said, and I don't know that that would be a proper inquiry at this point, my client did go out to the premises. Jersey County is not an area that typically my client does work, but, I mean, his time... Well, you allege that he complied with the terms of the contract, didn't you? I mean, he was doing everything... Is that alleged? Let me look at the First Amendment. It says plaintiff complied with the terms of the contract. So the answer is, yes, that was alleged. How? Sure. So, I mean, he had a contract. He was going out to the premises to, pursuant to the contract, to try and start work on the project. But my point is no work was ever done by your client, right? I have not asked him details of the extent of what was ordered and the like, but he did go out. He did meet with the homeowner. He did spend time talking with them. He was making efforts to... In the Supreme Court case, there was a lot of work done, right? There was. And that would make that possibly distinguishable from what we have here? Because basically all you're asking for is liquidated damages because you didn't get the job. That's what your client's asking for, right? Well, I mean, so the contract provides for liquidated damages or, I believe it was 28%. Well, a K-Miller construction and nothing gives liquidated damages. It did not. At least on the face of the case, it did not appear to, no. Okay. But, I mean, it would be my client's position that the home repair remodeling, it provides for, if my recollection is correct, a three-day window for a homeowner if they get cold feet, someone didn't want to sign it, someone felt pressured, whatever the legislature was thinking when they put that provision in to protect the homeowner. If someone didn't like something, they gave a three-day escape hatch, if you will, for someone to say, not interested, sorry, I'm walking away. To allow... Well, it doesn't say anything about liquidated damages, does it? It does not, but, I mean, as a matter of standard contract law, I don't see anything that prohibits it either. And liquidated damages are quite common where, be it construction or other contracts, where damages could be difficult to ascertain as long as it's not a penalty and reasonable to what potential work or time someone had put in. In your complaint where you say you wanted lost profits, based upon your argument today, you're not asking for lost profits because there are no lost profits. You're just asking for liquidated damages and attorney fees, right? Well, I think lost, an argument could be made, although I never actually got a... More likely than not, the $1,000, I think would be fair to say, is what my client has actually said. But you can't get lost profits and liquidated damages, can you? You can't get both. I agree with that. It's just the contract, I mean, depending on how a court would interpret it, whether it's this court or if it does get remanded or if it goes up another level. However, a court, whatever that court is, interprets that the either or of 1,000 or 28%, I think, would dictate what the damage model would be. But I think my client's attempt was in an instance where damages could be difficult to calculate, and that's the reason for a liquidated damages clause, just have it out there, have it in black and white, let the customer see it, and that way everyone knows going in what the deal is. Okay, thank you. You'll have rebuttal if you'd like. Thank you, Your Honor. Mr. Calvert. May it please the Court. Hi, Peter. If this contract is somehow valid, there's no purpose for the legislature to even pass the Home Repair Act to protect consumers. Basically, the Home Repair and Remodeling Act requires certain things to be in the contract for it to be valid, none of which were, and what happened in this case, I don't know if you justices have been involved in heel damage and roofers, but it just happened to us in Madison County, and there's roofers coming around our block like flies dropping out of trees, and what happened in this case, this roofer tried to tie down jobs without even having estimates, and he was waiting for State Farm or whoever to come out, measure the roof, determine the cost so he wouldn't have to do it, and then actually do the work. And if he had done that, if he had done the work and he had contacted the insurance company and came out and done the work, there's no question he'd be responsible for the price of the work done. It'd be quantum merit, just like the Supreme Court said. But this case doesn't involve that. It involves a contract that's not valid, or the alternative argument is it's not even a contract. It reports to be an authorization. Even though the language is contractual, this is a case where you've got a contractor who's got greater knowledge than the consumer, who gives the consumer a form that says authorization to contact insured, or insures authorization, and then talks about contacting his insurance company, which he didn't do. If he had done that and had the estimate done, he would have started ordering things, but he didn't do that. He didn't do anything other than come out. And the Act provides for expenses if you do an estimate, reasonable cost of estimates provided for. But that was never done here. And here we're facing a lawsuit by a roofer for liquidated damages, which are on the back sheet of an agreement that he would have to flip over and almost get a magnifying glass to read. And there was basically no disclosure of any of that. The guy says, sign this release. He signs it. He says, and then I'll get ahold of the insurance company. He didn't even say, I'll do the work for $10,000. That didn't happen. What happened with my roofer is my roofer, I contacted him. He says, once you get the estimate, I'll come out. I'll look at the estimate. We'll write something up. And he came out. And sure enough, State Farm had estimated the cost was going to be $14,000 to do my roof.  Here's the amount it's going to cost. Here's the number of shingles I'm going to buy, the time, and enumerated it all out like a work cost sheet in terms of everything that was going to be done and a proposed completion date. That's what a roofing contract is. It's not this. This is a solicitation to try to tie down business. This is what the legislature wanted. Did I understand you a minute ago to say that he gives this authorization for the company, that's your client, and there's no amount? There's no amount. Well, in the attachments. . . The amount supposedly is whatever the insurance company comes up with. But the attachments at some point in, I guess, page 3, 4, or 5 specify an amount. Was that not part of the authorization of the insured agreement that was signed at the time of the signing? No, the agreement that was signed doesn't have an amount. Okay. Well, then, what's this C-29, page 3 of the attachments, I guess it would be? Do you have your complaint handy? I guess what I'm asking is the stuff that State Farm or the paperwork that State Farm provided, was that provided at the time that the. . . That was provided to the other contractor. Was it provided at the time that the authorization of the insured was signed? No. The insurance company hadn't been contacted. That information was provided to the second contractor, who then had my client sign a contract and perform the work. That's when the insurance company was finally contacted, because this cardinal never contacted him. So my guy calls up Cardinal and says, I'm going to cancel the deal because I've got another guy now who's already got a hold of the insurance company and he's going to do the work. So then, basically, they won $1,000 because they didn't get the job. At the stage we're at now in the 2-6-15 motion. . . Excuse me? At the stage we are at now, which is the trial court dismissal. . . Right, the dismissal. 2-6-15. Understood. Based on Kay Miller not applying, only applying to subcontractors and not general contractors. And was that a correct reading of the case? No. It wasn't. My reading of the case was that the contractor, regardless of who he is, does the work, or a majority of the work, the consumer can't use the act as an excuse not to pay. Because that would be so detrimental to the contractor, who had done the job and he needs to get paid, then you've got a situation where the provisions of the act aren't going to apply because they don't mean a whole lot because everything has happened. In this case, nothing's happened. The only thing that's happened is you've got a contractor wanting liquidated damages. But I guess what I'm getting at is, if the trial court dismissed it based on a mistake of law, what do we do at this point? What do you do? Yeah, the appellate court. You just affirm the circuit court's dismissal. Even though he made a mistake of law. Even though he made a mistake of law. We can affirm a dismissal based on any reason from the record. However, this is a 2615 motion to dismiss. Doesn't the plaintiff have an opportunity, if there was a different grounds for dismissal, that maybe was appropriate, i.e., this not being a contract? Shouldn't the plaintiff have an opportunity to re-plead to allege a valid contract? I'm not sure what could be pledged. You know, on its face, there's no valid contract. You just look at the statute, look at the contract. There's no valid contract. What if the plaintiff could plead an oral contract? He could plead an oral contract based on quantum merriment, but not just an oral contract. That doesn't comply with the Act, too. The way you get around compliance is by performance. Well, Kay Miller very clearly indicates that that sort of oral contract would not be precluded by the provisions of the Home Repair Act. That's what was involved in Kay Miller. Okay, but Kay Miller, they did the work. That's a distinguishing fact, they did the work. I mean, but again, it goes back to my initial question, is if we were to find a different basis supporting the trial court's dismissal, this is a 2-6-15 dismissal. Shouldn't the plaintiff have an opportunity to re-plead? And again, not saying that there is something that could be validly pledged to sustain a cause of action. Well, he can't plead compliance with the Act because he didn't comply. Well, Kay Miller, and I think it's pretty clear, Kay Miller doesn't go towards the enforceability of the contract. Kay Miller has indicated that a failure to technically comply with the provisions of the Home Repair Act does not impact on the enforceability of the contract itself. So, you know, it doesn't make a contract unenforceable. The controlling fact in Kay Miller is the fact that they performed the work in quantum merit. That's not here. You can't extend that ruling to this case. Kay Miller didn't involve the question of whether or not it was an enforceable contract. You're absolutely right. Kay Miller involved the quantum merit claim. The claim before the Supreme Court, the issue before the Supreme Court, was whether or not a failure to comply with the provisions of the Home Repair Act would invalidate the oral contract. And the Supreme Court said, no, that alone does not invalidate the oral contract. Under these circumstances, though. Yeah. That's what, you know, I'm sorry I went to John Marshall. That's a controlling fact. It just is. That's all I have. Thank you. Okay, thank you. Any other questions? I see none. Thank you. Is there any rebuttal? The only point I'd like to emphasize, assuming there were some sort of, if the court looked at the contract or I'll just call it Exhibit A, attached to the first amended complaint, if there was not compliance with the Illinois Home Repair Remodeling Act, the remedy, if any, if the homeowner is going to have anything, would be under, the court says under Section 10A of the Consumer Fraud Law, it's not to try and implode everything and pretend like the homeowner didn't sign a contract. If they feel like they've got actual damages from, in this case, cardinal catastrophe, I'm not sure what they would be because they hired someone else. Are you saying he could counterclaim? Say it again? Are you saying he could counterclaim? Well, the Supreme Court on the page I have just, well, it looks like 938 Northeast 2nd 481. They're essentially saying a remedy for any sort of, assuming there is a violation of the Home Repair Remodeling Act, would be under the Consumer Fraud Law not to implode the contract. Again, I don't know. I mean, I'm just speculating and pontificating. I don't know what those damages would be if they didn't pay a nickel towards my client, what the damages would be. But the Supreme Court apparently is saying if there is a violation of the Home Repair Remodeling Act, that's where you go, not trying to pretend like. Well, I'm trying to follow your argument. So you're saying if you prevail and get your 17%, he could then turn around and say there's been a violation, and is that what you're saying? Then he would have damages. Mr. Francis would have damages, I'm saying. I don't know what his damages would be. Well, if you prevail, his damages would be whatever he has to pay you. He would say that Mr. Francis had to pay you because you didn't comply with the act in the first place. Is that what you're arguing? That's not quite what I'm arguing. I thought you'd probably say no on that. I understand that Your Honor may be looking at it that way. No, not necessarily. I'm just trying to get it all clear in my mind. I understand. If anything, I believe taking an interpretation like that would be rewarding someone for breaching a contract so that they could then in turn have a fraud case because they breached a contract. I would respectfully argue I don't think that's what the Supreme Court was getting at. And I mean, by the same token, I think K. Miller Construction Company, you had a case where it was argued by the contractor that, hey, I was wronged here.  The Supreme Court essentially said, well, maybe this didn't comply with the statute. Nevertheless, we're going to let you try and get your money. And I think that's the way of looking at it. The Supreme Court is trying and the legislature also is trying to just have an equitable resolution to just basic contract laws. If you sign a contract, it's a contract. And there are consequences, whether it's a liquidated damages clause or otherwise, there are consequences if you don't comply with them. And in this case, plaintiff, the cardinal catastrophe is seeking liquidated damages costs and fees for having to pursue what they think they were wronged out of. And I would ask that this court reverse the circuit court's ruling and remain in this case for further proceedings. Okay. Thanks to both cases submitted, the court stands at recess.